IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> SOURCE ONE STAFFING, INC. <br><br> Defendant. | No. 11-cv-6754 <br><br> Judge Robert M. Dow, Jr. <br> Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT'S RESPONSE IN OPPOSITION TO EEOC'S MOTION TO BIFURCATE**

Defendant, SOURCE ONE STAFFING, INC. ("Source One"), by and through its attorneys, for its Response in Opposition to Plaintiff, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION's ("EEOC") Motion to Bifurcate Discriminatory Referral Claim (referred to as "Motion to Bifurcate" or sometimes "Motion"), states:

**I.     INTRODUCTION**

EEOC, in its Motion to Bifurcate and its corresponding Memorandum of Law ("Memorandum"), seeks bifurcation of EEOC's claim filed in this action pursuant to Federal Rule of Civil Procedure 42(b) ("Rule 42(b)"), asserting the dubious proposition that bifurcation will promote judicial economy and at the same time avoid any prejudice toward Source One. The Court should reject EEOC's Motion for three reasons. First, EEOC's argument that bifurcation will save time is illusory. EEOC's proposed bifurcation framework will not promote judicial economy, but rather will entail two lengthy proceedings, much of which will be dominated by nearly identical evidence and testimony. EEOC's claims are atypical of the type of cases that fit the pattern and practice mold requiring bifurcation.

Second, even if the Court were to determine that bifurcation is proper, the issue of punitive damages should not be adjudicated in the first phase of trial because Source One's due process rights will be trampled if the jury is permitted to assess punitive damages without a prior determination that there is even a single claimant entitled to relief.[1]

Third, bifurcation is premature because EEOC has not yet properly answered Source One's discovery requests. As a result, Source One cannot determine that the EEOC is entitled to any relief. Despite the fact that EEOC has investigated Source One since 2007 and has had the benefit of discovery in this cause since September of 2011, EEOC has not disclosed a single person who has been the purported victim of discrimination, other than the three named charging parties.[2] In fact, Judge Gilbert has ordered that EEOC make such additional disclosures on or before June 1, 2013. (Docket #76.) Until EEOC makes such court-ordered disclosures, there is nothing to bifurcate. At a minimum, Source One should be able to examine the purported evidence against it before a Motion to Bifurcate is granted. The Motion to Bifurcate is therefore premature.

Because the evidence relevant to the individual damages claims will also be relevant to EEOC's "pattern or practice" claim, all of the evidence should be presented just once, in a single trial. For the reasons set forth below, the Court should deny the Motion to Bifurcate.

## II. BACKGROUND

EEOC's Complaint arises out of charges filed by three individuals, Jazmin Marin, Guadalupe Maldonado and Araceli Posadas (collectively, the "Charging Parties"). The Complaint seeks damages alleging that the Charging Parties were the subject of sexual harassment and retaliation. EEOC also alleges that a class of undisclosed claimant plaintiffs was

---

[1] EEOC has not disclosed a single plaintiff in the 19 months this case has been pending.
[2] The thrust of the charging parties' claims is sexual harassment. The claims EEOC seeks to bifurcate are based on gender discrimination.

2

discriminated against. (Complaint, paragraph 9(b) - (d) and paragraphs (d) – (f) of EEOC's prayer for relief.)

The EEOC charges filed by the Charging Parties were limited to Title VII charges of sexual harassment and retaliation. At no time during EEOC's investigation did EEOC advise Source One that EEOC's investigation was related to gender-based discrimination of a class of persons until EEOC served its purported conciliation letter upon Source One in or about May of 2011.

Source One is a staffing company that provides temporary labor services to its customers. Source One places its employees, such as the Charging Parties, at different customer locations wherein its employees provide services at the exclusive direction and control of Source One's customer. Source One has no supervisory authority over its employees while they are working at the customer's location; Source One's customer exclusively controls the employees.

The Charging Parties worked for some period of time for a Source One customer named Bonar Plastics, Inc. ("Bonar"). In the Complaint, EEOC alleges that a Bonar supervisor sexually harassed the Charging Parties. The Complaint also alleges that the Charging Parties were retaliated against as a result of the charges they filed with EEOC.

During its investigation of the Charging Parties' claims, and prior to the filing of this action, EEOC requested numerous documents from Source One, most of which were wholly unrelated to any charges being made by the Charging Parties. In response, Source One served upon EEOC over five thousand documents. At no time during its investigation did EEOC disclose to Source One that EEOC was contemplating the filing of a class action for the Charging Parties or any other claimants. Nor did EEOC ever disclose during its investigation that Source One was being investigated for purported violations of Title VII relating to gender discrimination

on a class-wide basis. Source One was unaware that EEOC was gathering information all along to launch its pattern and practice claim based on gender discrimination, claims wholly unrelated to the Charging Parties' claims.

On or about July 22, 2011, after the charges had been pending for five years, EEOC issued an Amended Determination relating to the three charges the Charging Parties filed.[3] Through the Amended Determination, Source One was advised for the first time that EEOC was seeking some type of "class action" relief on behalf of Source One employees. In addition, for the first time, Source One realized that EEOC was asserting that Source One engaged in pattern and practice discrimination. At no time did EEOC disclose the names of any class claimants or disclose the size of the purported class.

During the course of this litigation, Source One has disclosed to EEOC every business document it has in its possession from 2007 to 2011 with little exception. For example, Source One made available and produced to EEOC Source One's business records, including its entire database and payroll information that Source One uses in the operation of its business. In fact, during discovery in this cause, Source One produced a roster of employees from 2007 to 2011. The roster includes approximately 10,000 Source One employees. EEOC has stated in its answer to an interrogatory that each and every one of those employees represents the class.

To the contrary, EEOC's production has been limited to say the least. EEOC has mostly regurgitated documents Source One produced to EEOC during EEOC's investigation. EEOC has also produced some documents it obtained through third party discovery. Realizing the EEOC's disclosures of the names of the purported class plaintiffs is woefully inadequate, Judge Gilbert ordered that the EEOC supplement its answers to discovery on or before June 1, 2013. (Docket #76.) To date, Source One cannot determine the size of the purported class, the

---

[3] EEOC issued an original Determination on May 24, 2011.

damages purportedly incurred by any class member or even any damages suffered by the purported undisclosed class because EEOC has not provided the same; not even a single name of a single purported class plaintiff. Thus, as a result of EEOC's failings, Source One has not been able to defend this cause. In addition, it is wholly premature to bifurcate this cause without first allowing Source One to critically examine the much anticipated disclosures EEOC was ordered to make on or before June 1, 2013. Accordingly, the Court should deny EEOC's Motion to Bifurcate.

**III. ARGUMENT**

    **A. BIFURCATION IS PREMATURE**

Preliminarily, EEOC's request for bifurcation is premature. Due to EEOC's failure to identify its class of employees against whom Source One allegedly discriminated, neither EEOC, nor Source One, nor this Court has any indication of the size of EEOC's alleged class. As of the filing of this Response, EEOC has failed to identify a single member of its so-called class. EEOC has not articulated how the class has been damaged and in what amount. Rather, EEOC's gender discrimination case is premised solely on an "Employee Request Form" Source One utilized and EEOC's apparent presumption that said form is facially discriminatory. Although EEOC *alleges* in its Complaint that Source One has violated title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, EEOC's allegations are just that – allegations. EEOC has not been able to identify a single individual who has been damaged by Source One's "Employee Request Form," or some practice of Source One. This despite EEOC's unfettered access to Source One's information. This failure on the part of EEOC has resulted in Source One's inability to defend these purported class claims. To date, Source One is not certain what claims *could* be bifurcated given the EEOC's failure to disclose. Perhaps once an adequate

disclosure is made pursuant to Judge Gilbert's Order, then a discussion of bifurcation could more readily take place. For now, it is clear that the EEOC should first disclose information to Source One as required before such a bifurcation motion is granted.

### B. EEOC'S PROPOSED BIFURCATION MODEL WILL NOT PROMOTE JUDICIAL ECONOMY

Rule 42(b) of the Federal Rules of Civil Procedure provides:

> (a) CONSOLIDATION. If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
>
> (2) consolidate the actions; or
>
> (3) issue any other orders to avoid unnecessary cost or delay.
>
> (b) SEPARATE TRIALS. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

FRCP 42(b).

In making their determination as to whether bifurcation is proper, courts interpreting bifurcation motions require the promotion of judicial economy. *Real v. Bunn-O-Matic Corp.* 195 F.R.D. 618, 620 (N.D. Ill. 2000). Here, EEOC argues that its proposed bifurcation model will promote judicial economy. In fact, it will do just the opposite. EEOC's "judicial economy" argument is based on the incorrect assertion that if there is no finding of liability for a "pattern or practice," Source One cannot be held liable on any claims for individual relief thus rendering phase two unnecessary. This argument has been unequivocally rejected by the Supreme Court:

> [A] plaintiff's attempt to prove the existence of a companywide policy … may fail even though discrimination against one or two individuals has been proved.
>
> …

> It could not be more plain that the rejection of a claim of classwide [pattern or practice] discrimination does not warrant the conclusion that no member of the class could have a valid individual claim.

*Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 877-78, 104 S. Ct. 2275 (1984) (emphasis added). Thus, even if there is not a finding of a "pattern or practice" under EEOC's proposed first phase, there must still be a trial for each claimant seeking individual-specific relief, to the extent any such claimants actually exist.

Here, EEOC's proposed bifurcation plan promotes the exact opposite as the witnesses, testimony and evidence in phase one will almost certainly be duplicative of the witnesses, testimony and evidence in phase two.

### C. *TEAMSTERS* DOES NOT SUPPORT EEOC'S PROPOSED "PUNITIVES FIRST" BIFURCATION MODEL

Relying primarily on *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) ("*Teamsters*"), EEOC has blended various cases, attributed their specific circumstances to all of their as of yet unidentified claimants and have indicated that it will seek an award of punitive damages all before any determination regarding whether even a single claimant even exists. While *Teamsters* may suggest that a bifurcated trial is appropriate when the movant meets the required standards, the proposition that the assessment of punitive damages should be made part of the first phase of a bifurcated trial is not part of the *Teamsters* approach.

Under the *Teamsters* approach, a showing that race discrimination was the employer's standard operating procedure at phase one of the proceedings justifies the imposition of prospective relief and sets up a rebuttable presumption that adverse decisions affecting class members were racially motivated. *Teamsters*, 431 U.S. at 361-62. In the second phase of those bifurcated proceedings, if the defendant cannot rebut the presumption, then individual remedies are to be determined. *Id.*

However, nowhere in *Teamsters* did the Court extrapolate bifurcation to provide for class-wide punitive damages (on what in this case would be on behalf of a still undetermined class) without the plaintiff first submitting evidence that each individual claimant actually suffered damages, much less that such individual claimants even exist. To allow this case to proceed in EEOC's proposed format would taint this entire case. Also, there is simply no legal precedent for this new proposition that the EEOC should be allowed to present such evidence of punitive damages in the first phase. If this were the case then Source One would have to present evidence that the individual class plaintiffs did not suffer such damages. As set forth in *Teamsters*, such individual damages are reserved for the second phase.

Contrary to EEOC's assertion that a jury that finds that Source One is liable for "pattern or practice" discrimination would also be in the best position to determine if punitive damages are appropriate and the extent of such damages (Memoranudm at p. 13), a pattern and practice finding only justifies an award of <u>prospective</u> relief such as an "injunctive order against continuation of the discriminatory practice [or] an order that the employer keeps records of its future employment decisions…" *Teamsters*, 431 U.S. at 361.

In *Teamsters*, the United States Supreme Court never determined that a phase one finding of the existence of discrimination establishes an individual class member's right to damages. In fact, *Teamsters* suggests the exact opposite. As the *Teamsters* Court stated:

> When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief.

*Id.* A phase one finding merely "supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Id.* at 362.

8

Only after a phase one finding is the employer, in this case Source One, permitted to contest liability toward individual claimants. *Id.* In other words, according to the *Teamsters* Court, the purpose of the second phase is not simply to adjudicate damages but also to adjudicate liability as to each claimant.

EEOC's proposed approach of imposing class-wide punitive damages based on a general finding of gender discrimination but prior to any determination concerning the actual number of claimants deserving of damages is illogical and flies in the face of fundamental fairness. Punitive damages must reasonably relate to actual damages. *Phillip Morris USA v. Williams*, 549 U.S. 346, 353, 127 S. Ct. 1057, 166 L. Ed. 2d 940 (2007) ("*Phillip Morris*"). Individuals who are not entitled to monetary relief cannot obtain punitive damages. *Phillip Morris*, 549 U.S. at 354; *State Farm Mut. Auto. Life Ins. Co. v. Campbell*, 538 U.S. 408, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003) ("*State Farm*").

In *Phillip Morris*, the United States Supreme Court stated:

> [T]o permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured? Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate. And the fundamental due process concerns to which our punitive damages cases refer--risks of arbitrariness, uncertainty, and lack of notice--will be magnified.

*Id*. at 353.

In *State Farm*, the Supreme Court held that the state appellate court erred in reinstating a $ 145 million punitive damages award that the jury had assessed for an automobile liability insurer's bad faith refusal to settle an accident claim on behalf of its insureds. *State Farm*, 538 U.S. at 429. The Court held that the excessive punitive award violated due process where compensatory damages were $ 1 million and evidence of out-of-state conduct unrelated to the insureds' specific harm permitted the jury to condemn State Farm for its nationwide policies. *Id*.

9

at 420.  Although the Court was considering an award in an individual, not a class, action, it noted that punishment on any basis that does not have a nexus to the specific harm suffered by tan individual plaintiff "creates the possibility of multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains."  *Id.* at 423.  *See also Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358 (E.D. Ark. 2007) (class-wide award of punitive damages held improper and over-deterrent without prior individualized determination of damages).

Based on *Phillip Morris* and *State Farm*, without individual determinations of liability and damages for each purported individual class claimant, there is no legal justification for allowing evidence of punitive damages to be presented in phase one.  At phase one of EEOC's proposed bifurcated trial, the jury will not know the number and/or identity of the actual victims because there will not have been any determination with respect to which, if any, of EEOC's so-called class is entitled to relief.

EEOC also relies on *EEOC v. Dial*, 259 F. Supp. 2d 710 (N.D. Ill. 2003),[4] a case that was subsequently rejected by *EEOC v. International Profit Assoc, Inc.*, 01 C 4427, 2007 WL 3120069 (N.D. Ill. Oct. 23, 2007) ("*IPA*").  In *IPA*, EEOC brought a "pattern or practice" gender discrimination and hostile work environment case against the defendant.  EEOC requested a bifurcation scheme similar to that which EEOC requests here.  As it did here, in *IPA*, EEOC cited to *Dial*.  However, Judge Gotschall rejected EEOC's proposed bifurcation plan.  First, the court set forth EEOC's plan:

> EEOC is seeking to blend aspects of *Mitsubishi, Dial,* and *Jenson* to create an approach that will dramatically increase its odds of prevailing in this case, particularly with respect to its ability to recover punitive and compensatory damages.[9]  In essence, the EEOC wants to prove every element (save the subjective showing) of the individual claimants' cases by aggregating its evidence

---

[4] Notably, *Dial* never went to trial. Although the framework in *Dial* was in place, it was never actually utilized.

10

>against IPA at the class stage. Under the EEOC's theory, it would then be entitled not only to injunctive relief but also to punitive damages, so long as the jury found IPA reckless or malicious. To recover compensatory damages, the EEOC would then be required only to present evidence that the individual claimants did not welcome the harassment to which they were exposed. IPA would not be permitted to argue that the harassment a specific claimant experienced was not actionable or that it took appropriate remedial action with respect to a particular claimant, for these elements would be established based on the EEOC's pattern or practice showing. Rather, IPA's only defenses to the individual claimants' damages claims would be to argue that the harassment was not based on sex or that the claimants were not subjectively offended by the conduct.

*IPA*, 2007 WL 3120069 at *9.  Then, the court rejected that plan:

>The court rejects the EEOC's proposed method of proof because it is legally flawed in numerous respects. As an initial matter, the EEOC overlooks what is, in this court's opinion, binding Seventh Circuit precedent with regard to the EEOC's position on punitive damages. In *Jefferson v. Ingersoll,* 195 F.3d 894, 896-97 (7th Cir.1999), a class action race discrimination suit, the Seventh Circuit considered whether the district court could certify a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure when the plaintiffs sought not only injunctive relief under the pattern or practice theory, but also punitive and compensatory damages under 42 U.S.C. § 1981a (2006). In holding that the district court could do so "only when monetary relief is incidental to the equitable remedy," *id.* at 898, the Seventh Circuit had the following to say about awarding damages on a class-wide basis: "Money damages under § 1981a(b) are neither injunctive nor declaratory, and they do not affect a class as a whole. It is possible for one applicant for employment to recover substantial damages while another recovers nothing (for example, because the second person would have been rejected under nondiscriminatory conditions, or found a better job elsewhere)." *Id.* at 897.
>
>…
>
>Damages can be awarded only after proof of discrimination and injury specific to the individual plaintiff, so deciding the damages claims depends on an individualized analysis of each class member's circumstances and requires additional hearings to resolve the disparate merits of each individual's case. Even if the plaintiffs prove that [the defendant] administered the referral hall in a discriminatory manner and won injunctive and declaratory relief on that ground, each individual plaintiff pursuing damages claims still would need to establish that [the defendant's] discrimination caused her personal injury and would need to show the magnitude of the injury to determine compensatory damages. *Similarly, to win punitive damages, an individual plaintiff must establish that the defendant possessed a reckless indifference to the plaintiff's federal rights-a fact-specific inquiry into that plaintiff's circumstances.*

11

*Id.* at *9-10, *citing Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO,* 216 F.3d 577, 579 (7th Cir.2000) (citations omitted) (emphasis added in *IPA*). The court concluded:

> Although *Jefferson, Lemon,* and *Allison* all dealt with class certification issues, the court concludes that they foreclose the EEOC's request that punitive damages be determined in Phase I. The Supreme Court has stated that the substantive standards applicable to pattern or practice actions brought by the EEOC are the same as those that apply to class actions brought by private plaintiffs, *Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 876 n. 9, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984), and the court cannot discern any reason (the EEOC does not articulate one) to treat this case differently than the class cases considered by the Seventh Circuit. Although the Seventh Circuit has not explicitly passed judgment on the question of whether punitive damages *can* be awarded on a class basis, it has certainly indicated its leaning-based on *Allison*-in *Jefferson* and *Lemon.* Furthermore, there is no question that the claimants in this case were not subject to the same discriminatory act or series of acts. Rather, as in *Allison,* each of the EEOC's 113 claimants alleges different facts in support of her claim.
>
> ...
>
> In this case, the jury will consider punitive damages at the individual stages, and will make a determination as to whether IPA was reckless or malicious with respect to the federal rights of each individual claimant.

*Id*. at *11-12.

Two Seventh Circuit cases upon which Judge Gotschall relied in *IPA*, *Lemon v. International Union of Operating Engineers, Local No. 139*, 216 F.3d 577 (7th Cir. 2000) and *Jefferson v. Ingersoll International Inc.*, 195 F.3d 894 (7th Cir. 1999), also belie EEOC's claim that liability issues for individual damage claims can be resolved during a "pattern or practice" phase.

In *Lemon*, the Seventh Circuit held that Section 1981a claims for compensatory and punitive damages "can be awarded *only after proof of discrimination ... specific to the individual plaintiff*," not based simply on a finding of an abstract "pattern or practice" of discrimination. *Lemon*, 216 F.3d at 581 (emphasis added). Further explaining why each claimant must prove that they were subjected to actionable discrimination in order to recover damages under Section

12

1981a (as opposed to being entitled to injunctive relief on a finding of a "pattern or practice"), the Seventh Circuit stated:

> Money damages under § 1981a(b) are neither injunctive nor declaratory, and *they do not affect a class as a whole*. It is possible for one [claimant] to recover substantial damages while another recovers nothing.

*Jefferson*, 195 F.3d at 897 (emphasis added); *see also Lemon*, 216 F.3d at 581 ("[D]eciding the damages claims depends on an individualized analysis of each class member's circumstances.").

Thus, it is clear that the Seventh Circuit rejects EEOC's approach. *See also Rutstein v. Avis Rent-A-Car*, 211 F.3d 1228, 1239 (11th Cir. 2000) ("[T]he establishment of a policy or practice of discrimination cannot trigger the defendant's liability for damages to all the plaintiffs in the putative class."), *cert. denied*, 532 U.S. 919, 121 S. Ct. 1354 (2001); *Reeb v. Ohio Dept. of Rehabilitation and Correction*, 435 F.3d 639, 651 (6th Cir. 2006)(same); *Israel v. Avis Rent-A-Car Sys., Inc.*, 185 F.R.D. 372, 383 (S.D. Fla. 1999) (same) *rev'd on other grounds sub nom.*, 211 F.3d 1228; *Miller v. Hygrade Food Prod. Corp.*, 198 F.R.D. 638 (E.D. Pa. 2001) (same); *Robertson v. Sikorsky Aircraft Corp.*, 2000 WL 33381019, *8 (D. Conn. 2001) (same); *Ramirez v. DeCoster*, 194 F.R.D. 348, 354 (D. Maine 2000) (same); *Zachery v. Texaco Exploration & Prod., Inc.*, 185 F.R.D. 230, 237 (W.D. Tex. 1999) (same).

As the Seventh Circuit noted in *Lemon*:

> Even if the plaintiffs prove that Local 139 administered the referral hall in a discriminatory manner and won injunctive and declaratory relief on that ground [*i.e.*, a pattern or practice], each individual plaintiff pursuing damages claims still would need to establish that Local 139's discrimination caused her personal injury and would need to show the magnitude of injury to determine compensatory damages. Similarly, ***to win punitive damages, an individual plaintiff must establish that the defendant possessed a reckless indifference to the plaintiff's federal rights – a fact-specific inquiry into that plaintiff's circumstances***.

*Lemon*, 216 F.3d at 581 (emphasis added), *citing Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118 (1999).

13

The method EEOC is proposing is illogical. It seeks to impose punitive damages against Source One prior to a determination on the issue of whether Source One is liable to even a single putative claimant, much less a determination as to whether any of EEOC's purported claimants was actually injured by Source One's alleged conduct. To illustrate the illogical nature of EEOC's proposed bifurcation plan, it is entirely possible for Source One to be found liable for "pattern or practice" discrimination in phase one and a corresponding punitive damages award assessed by that initial jury, only to have Source One disprove every individual claim in phase two. If this absurdity were to occur, Source One could be held liable for punitive damages in the absence of any actual damages. Such an outcome flies in the face of the case law cited above.

Because EEOC is seeking compensatory and punitive damages and because the Seventh Circuit (not to mention other courts) has held that compensatory and punitive damages "depend[] on an individualized analysis of each member's circumstances," *Lemon*, 216 F.3d at 581, the EEOC's bifurcation proposal should be rejected and its Motion to Bifurcate denied.

D. **EEOC'S MOTION TO BIFURCATE IGNORES THE CHARGING PARTIES' CLAIMS**

Finally, aside from a footnote at the bottom of page 2 of its Memorandum, EEOC completely ignores the Charging Parties and their claims against Source One. In that footnote, EEOC states, without any support, that the Charging Parties' "claims should be tried in their entirety during the same trial where the jury will decide whether Source One engaged in a pattern or practice of sex discrimination with respect to job referrals and award punitive damages on a class-wide basis." (Memorandum at p.2, fn 2.) In other words, EEOC wants to prejudice Source One by presenting to one jury evidence relating to the specific sexual harassment claims of four female employees with general evidence (if any exists) of gender discrimination. EEOC does not support this new methodology of bifurcation with any legal support. EEOC's proposals are

14

simply not supported by the law. It is neither up to this Court nor Source One to redesign EEOC's suggested method of bifurcation to comport with the law. Thus, Source One respectfully submits that the EEOC's Motion to Bifurcate should be denied.

## IV. CONCLUSION

WHEREFORE, Defendant, SOURCE ONE STAFFING, INC., respectfully prays that this Honorable Court deny EEOC's Motion to Bifurcate Discriminatory Referral Claim and grant Source One such other relief that the Court determines is necessary and just.

Respectfully submitted,

SOURCE ONE STAFFING, INC.

 s/ Elliot S. Wiczer
 One of its Attorneys

Elliot S. Wiczer (ARDC #6208432)
John M. Sheldon (ARDC #6256666)
Foreman Friedman, PA
500 Skokie Blvd., Suite 325
Northbrook, IL 60062
(847) 849-4850